**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

**DONNA KEEN,**

Plaintiff,

v.

**REGIONAL EMERGENCY MEDICAL SERVICES OF GEORGIA, INC.**,

Defendant.

Civil Action No. 7:11-CV-106 (HL)

**ORDER**

This case is before the Court on Defendant's Motion for Summary Judgment (Doc. 20). After reviewing the pleadings, affidavits, depositions, and other evidentiary materials presented, the Court grants, in part, and denies, in part, Defendant's motion. Defendant's request for oral argument is denied.

## I. BACKGROUND AND FACTS

When viewed in the light most favorable to Plaintiff, as the Court must do at this point, the facts involved in this case are relatively straight forward. Plaintiff worked for Defendant as an EMT. During her employment, she had an affair with Lee Clanton, a co-worker. Lee's wife, Laura, also worked for Defendant. Laura was responsible for training all EMTs and paramedics who worked for Defendant, including Plaintiff, as she was the company's state-certified training officer.

As is not unusual, Laura found out about Lee's affair through the company grapevine. Plaintiff had already talked openly about the affair with people in the

company, including Ben Jackson, the company director. When Laura found out about the affair, she called Jackson, who was her superior, and told him what she had learned. After speaking to Laura, Jackson immediately called Plaintiff, and according to Plaintiff, Jackson told her that Laura had demanded that Plaintiff be fired, and that she had a choice to either resign or be terminated.[1] Plaintiff said she would rather resign than have a termination on her record.[2]

Even though Plaintiff purportedly resigned, she agreed during the telephone conversation with Jackson to work her previously scheduled shift the next day, July 17, 2010. But distraught over the end of the affair and her job, Plaintiff had one too many drinks at a friend's house and got sick. At some point she was taken by a co-worker to the ambulance station where she was scheduled to work and given an IV of saline solution. Plaintiff did not request transport to the station, but just woke up there on the morning of July 17.

While at the station, Plaintiff decided she did not want to work, as she was still upset over what happened the night before. She received permission to call in a replacement employee. Plaintiff called Travis Swann, who covered the shift. Plaintiff was then driven home by a friend. Also at the station on the morning of July 17 were Joseph Leverett and Apondrea Marshall, who were both shift

[1] Laura denies demanding that Plaintiff be fired.

[2] Jackson cannot remember one way or the other if he told Plaintiff she should resign, but remembers telling Plaintiff that Laura said she could not continue to work for Defendant if Plaintiff was still working for the company.

captains and Plaintiff's superiors. Both Leverett and Marshall saw Plaintiff and testified that she was not intoxicated. Instead, she was upset. Marshall testified that Plaintiff was sober and could have worked the shift if she had wanted to do so.

After having some time to think it over, Plaintiff decided she did not agree that she should have to resign or be fired when Lee was not similarly punished. On July 18, Plaintiff called Jackson and told him that she had reconsidered and that she should not have to lose her job when Lee did not have to lose his.[3] Jackson told Plaintiff she would need to come in and meet with Tommy Willis, the owner of the company.

On July 20, 2010, Plaintiff met with Willis and Tracey O'Neal, who was in human resources. Plaintiff reiterated her position that she should not be fired or have to resign and that she believed she had done nothing wrong.[4] Nevertheless, Plaintiff was fired. Willis testified that Plaintiff was fired because she came to work intoxicated and was unable to perform her duties. He also testified that

---

[3] There is a conflict in the evidence as to whether Lee was disciplined at all. Lee testified that he was demoted and sent home for a day with pay. Tommy Willis, the company owner and ultimate decision maker, testified that Lee was not suspended, but "did get demoted for some reason. I'm not sure what it was." Jackson, Lee's supervisor, testified that Lee was never demoted or disciplined for any reason at all.

[4] The company does not have a non-fraternization policy.

Plaintiff was on probation at the time she failed to work the July 17 shift and that factored into the decision to terminate her.

During her employment with Defendant, Plaintiff participated in a paramedics training course. In order to be certified as a paramedic, Plaintiff had to go through classroom training and earn a certain number of clinical hours. Once she completed her clinical hours, Plaintiff would take the national paramedics examination, and assuming she passed, Plaintiff would be a paramedic. According to Plaintiff, she acquired the requisite number of clinical hours, but Laura Clanton, who was the only person employed by the company who could certify Plaintiff to take the examination, refused to certify Plaintiff's hours and submit her name as eligible to sit for the examination. Plaintiff has yet to sit for the paramedics examination.

On August 16, 2011, Plaintiff filed suit pursuant to Title VII of the Civil Rights Act of 1964, alleging two claims. The first is a gender-based disparate treatment claim. The second is a two-part retaliation claim, with one claim focused on Plaintiff's termination and the other on Laura Clanton's refusal to certify Plaintiff for the paramedics examination. Defendant has filed a motion for summary judgment, arguing that it is entitled to judgment in its favor on both of Plaintiff's claims.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Trial Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. “Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.” Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986)).“If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.” Anderson, 477 U.S. at 249-50 (internal citations omitted).

## III. ANALYSIS

### A. Disparate Treatment Claim

As noted above, the party moving for summary judgment always bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record which it contends demonstrate the absence of a genuine issue of material fact. United States v. Four Parcels of Real Prop. in Green and Tuscaloosa Counties, 941 F.2d 1428, 1437-38 (11th Cir. 1991). If the moving party does not carry its initial burden, the motion for summary judgment must be denied. Fitzpatrick v. City of Atlanta, 2 F.3d 1112,

1116 (11th Cir. 1993). It is the obligation of the Court to ensure that the standards of summary judgment are met.

As to Count One of Plaintiff's complaint, Defendant has not met its burden on summary judgment. Count One is a disparate treatment claim based on gender. Defendant moved for summary judgment on a hostile work environment claim, a claim that is not in the case. Defendant has not properly moved for summary judgment on the disparate treatment claim. Thus, Defendant's motion as to Count One is denied.[5]

**B. Retaliation Claim**

Count Two is a retaliation claim. Plaintiff alleges that she was retaliated against in two ways: (1) she was terminated from her employment; and (2) Laura Clanton will not certify Plaintiff to take the national paramedics examination.

Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this title . . . or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this title [42 U.S.C. §§ 2000e-2000e-17]." 42 U.S.C. § 2000e-3(a).

[5] Whether Plaintiff will prevail at trial is an entirely different matter. But she is entitled to have this claim heard by a jury. It is not the Court's responsibility to correct Defendant's incorrect analysis. The Court notes that Defendant did not file a reply brief or make any attempt to correct the analysis, even after Plaintiff pointed out the problem in her response brief.

Plaintiff's retaliation claims are based upon circumstantial evidence. Thus, the Court must apply the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, to resolve the pending motion. To establish a prima facie case of retaliation, the plaintiff must show: (1) that she "engaged in statutorily protected activity;" (2) that she "suffered an adverse employment action;" and (3) that "there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008).

If a plaintiff can establish a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the challenged employment action. Id. Then the burden moves back to the plaintiff to show that the employer's proffered reasons were merely pretext to mask discriminatory actions. Bryant v. Jones, 575 F.3d 1281, 1307 (11th Cir. 2009). The plaintiff may establish pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005).

The Court will address Plaintiff's retaliation claim relating to Laura Clanton first, then the claim relating to her termination.

**1. Paramedics examination**

Plaintiff's claim as to Laura Clanton's refusal to certify her for the national paramedics examination fails because Plaintiff cannot establish a prima facie case of retaliation.

Plaintiff must demonstrate a causal connection between the statutorily protected expression (that she complained to Jackson and Willis about Lee not being similarly disciplined) and the retaliatory conduct (Laura not certifying Plaintiff for the national examination). "In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000). "That requirement rests upon common sense. A decision maker cannot have been motivated to retaliate by something unknown to him." Id.

Plaintiff asserts that at the conclusion of the paramedic training course, which ended on July 10, 2010, Laura refused to certify Plaintiff to sit for the national paramedics examination. This was because, according to Plaintiff, Laura was suspicious that Plaintiff and Lee were having an affair. That may be, but the question before the Court is whether there is a connection between the protected activity and the adverse action. It was not until July 18 that Plaintiff spoke to Jackson and said it was unfair that she was being asked to resign or be fired and

not Lee, and Plaintiff did not talk to Willis about the same matter until July 20. Laura had already taken her allegedly adverse action before Plaintiff engaged in the protected activity. Thus there could be no retaliation. The timing just does not work. It is impossible to retaliate for something that has not yet happened. *See* Goldsmith, 513 F.3d at 1278 (holding that the decision maker must know about the protected conduct at the time of the adverse action) (internal quotation marks and quotation omitted).

To the extent Plaintiff contends the retaliation by Laura is ongoing, in that Laura to this day will not certify Plaintiff to take the national examination, the Court finds there is no causal connection sufficient to establish a retaliation claim. To be quite blunt, even assuming Laura is acting improperly in some fashion against Plaintiff, it is because Plaintiff had an affair with Laura's husband, not because Plaintiff complained to Willis or Jackson about the differential treatment. "It is easy to forget, however, that Title VII deals with discrimination in the workplace, not morality or vulgarity." E.E.O.C. v. Harbert-Yeargin, 266 F.3d 498, 519 (6th Cir. 2001). The courts have a duty "to ensure that Title VII does not become a general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S.Ct. 2275 (1998). There simply is not a sufficient connection between the protected activity and the adverse action to establish a prima facie case on

the certification issue. Defendant's summary judgment motion as to the Count Two retaliation claim based on the paramedics examination is granted.

**2. Termination**

Plaintiff's termination, however, is another story. To establish a prima facie case of retaliation, Plaintiff must first show that she engaged in activity protected by Title VII. By complaining to Jackson and Willis that she was being treated differently than Lee, Plaintiff engaged in activity protected by Title VII.

The second element of the retaliation prima facie case is whether Defendant took an adverse employment action against Plaintiff. It is clear that such an action occurred, as Plaintiff's employment was terminated.

The final element is a causal connection between the protected activity and the adverse action. The law is clear that causation for purposes of a prima facie case may be established by showing close temporal proximity between the statutorily protected activity and the adverse employment action. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). Plaintiff complained to Jackson on July 18, and to Willis on July 20. Plaintiff was fired during the same meeting where she made her position known to Willis. The temporal proximity could not be any closer. *See generally* Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508 (2001) (citations omitted) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity

and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") Certainly a reasonable fact finder could find a causal connection between Plaintiff's protected activity and her termination. *See* Bechtel Constr. Co. v. Sec. of Labor, 50 F.3d 926, 934 (11th Cir. 1995) ("Proximity in time is sufficient to raise an inference of causation.") Thus, Plaintiff has established a prima facie case of retaliation.[6]

Now the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802. Defendant contends that Plaintiff was fired for missing a shift and coming to the station intoxicated. Defendant further states that Plaintiff was on probation at that time. Plaintiff does not make any argument to the contrary that failing to report to work and allegedly being intoxicated at work were legally sufficient reasons for termination, and the Court finds that Defendant has met its burden on that part of the retaliation test.

Now the burden shifts back to Plaintiff to show pretext. "The inquiry into pretext requires the court to determine, in view of all the evidence, whether the

---

[6] The one exception to the rule that temporal proximity alone can raise an inference of causation is when there is unrebutted evidence that the decision maker did not know that the employee engaged in protected conduct. *See* Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1355-56 (11th Cir. 1999). That exception does not apply in this case, as Plaintiff contends she complained about the disparate treatment directly to Willis, the decision maker.

plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not actually what motivated its conduct" but "were a pretext for [retaliation.]" Crawford v. Carroll, 529 F.3d 961, 976 (11th Cir. 2008) (internal quotations omitted).

Based on all the evidence in the record, the Court finds that there are triable issues of material fact remaining as to why Plaintiff was terminated and whether it was a retaliatory act. Defendant first contends Plaintiff was fired for failing to show up to work as scheduled. However, there is evidence that Plaintiff properly made arrangements to have someone else at the station to work her shift on the morning at issue, and that co-worker did in fact cover the shift. Defendant next contends Plaintiff was fired for coming into the station intoxicated, but two people who were actually at the station on the morning of July 17 testified that Plaintiff was not intoxicated, and in fact one testified that Plaintiff could have worked if she wanted to work. Willis did not actually see Plaintiff at the station, so he had no firsthand knowledge of whether she was drunk or not. Willis testified that Jackson is the person who called him and told him about Plaintiff's intoxication, but there is no evidence in the record that Jackson was at the station that morning either. Finally, Defendant contends that Plaintiff was on probation and termination was the next step in the disciplinary

process. But Plaintiff states that she was never written up, and her supervisors testified that they were not aware of Plaintiff being on probation during the time at issue. There is no evidence at all in the record to support the assertion that Plaintiff was on probation. Her personnel file was not submitted, and there are no written notices or warnings in the record demonstrating that Plaintiff was on probation at any time. It is also notable that there is no written documentation in the record outlining why Plaintiff was terminated.

In the Court's opinion, Plaintiff has demonstrated sufficient inconsistencies and contradictions in Defendant's proffered reasons for her termination such that a reasonable jury could find them unworthy of credence. It is for a jury to decide whether Plaintiff's termination was in retaliation for speaking out against what she perceived to be discriminatory conduct. Defendant's motion as to the Count Two retaliation claim based on Plaintiff's termination is denied.

**C. Failure to Mitigate Damages**

Defendant also moves for summary judgment as to Plaintiff's alleged failure to mitigate her damages. However, failure to mitigate is an affirmative defense under Federal Rule of Civil Procedure 8(c) and is waived by the failure to plead it. Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1287 (11th Cir. 2000). Defendant did not raise failure to mitigate as an affirmative defense in its answer. Much like a plaintiff cannot amend his complaint through summary

judgment pleadings, Defendant cannot use summary judgment to amend its answer to raise an affirmative defense. Thus, this portion of Defendant's summary judgment motion is denied and the failure to mitigate defense is deemed waived. *See* United States v. City of New York, 847 F.Supp.2d 395, 427-28 (E.D.N.Y. 2012) (finding that the city waived its mitigation defense in Title VII action by failing to plead failure to mitigate as an affirmative defense in its answer); *see also* Sayre v. Musicland Group, Inc., 850 F.2d 350, 354 (8th Cir. 1988) ("[F]ailure to plead [lack of] mitigation of damages as an affirmative defense results in a waiver of that defense and its exclusion from the case.")

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. 20) is granted, in part, and denied, in part. Plaintiff's disparate treatment claim and her retaliation claim as to her termination will be tried during the next trial term, which is set to begin on January 29, 2013, in Valdosta. Pretrial instructions will be sent to the parties prior to the trial term.

**SO ORDERED**, this the 15th day of October, 2012.

***s/ Hugh Lawson***
**HUGH LAWSON, SENIOR JUDGE**

mbh